IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### NOVEMBER TERM, 1896.

---

### JACOB S. JOHNSON v. THE STATE.

1. The act of June 13th, 1895, that was designed to abolish the Pleas, Oyer and Sessions, being unconstitutional in its entirety, did not abolish any of them.
2. The decision of the trial judge, sitting as the statutory trier of challenges to the jury, is conclusive with respect to the facts involved in the inquiry.
3. The statutory regulation that the sheriff shall file a list of jurors summoned by him, is directory and not mandatory.
4. Impressions of footprints made in a box of sand with the boot worn by the prisoner, may be exhibited by the state to witnesses who had seen certain footprints near the body of the murdered person, for the purpose of comparison.
5. The merits of the case examined by virtue of the act of 1894.

---

The indictment in this cause was for murder in the first degree, and was found in the Court of Oyer and Terminer of the county of Somerset. At the December Term, 1895, of said court the defendant was found guilty and sentenced to death. A writ of error was subsequently allowed by the Chancellor.

271

Argued at June Term, 1896, before BEASLEY, CHIEF JUSTICE, and Justices MAGIE, GARRISON and LIPPINCOTT.

For the plaintiff in error, *William V. Steele* and *James J. Meehan.*

For the state, *Nelson Y. Dungan,* prosecutor of the pleas, and *James J. Bergen.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This trial took place before the Oyer and Terminer of the county of Somerset, and resulted in a conviction of the defendant of the crime of murder in the first degree. The case is now before this court through the medium of a writ of error allowed by the Chancellor.

The first exception to these proceedings urged in the brief of counsel is that the case has been tried before a tribunal that did not exist. This contention is founded on the provision of the statute enacted June 13th, 1895, and which is entitled "An act to abolish the Inferior Court of Common Pleas, Courts of Oyer and Terminer and General Jail Delivery, and Courts of General Quarter Sessions of the Peace, and to establish in their place a county court in each of the counties of this state, and to provide for and define the jurisdiction, powers and duties of such county courts."

The first section of this act abolishes the courts thus designated and erects upon their ruins another court which it invests with the jurisdictions of the tribunals thus superseded.

In the case of *Schalk* v. *Wrightson,* 29 *Vroom* 50, the question was considered in this court whether the jurisdiction inherent of old in the Court of Common Pleas could be transferred to the new court thus created, and the conclusion was that so far as related to the transference of such jurisdiction, the act was unconstitutional.

Applying the usual legal test to such a juncture, it would seem to follow, as a matter of course, that if the act be invalid in the particular mentioned, that it is so in its entirety. The

effect of the decision referred to is to strip the newly desig-
nated tribunal of almost all of its power over civil causes, and
certainly, in view of such a mutilation, it is impossible to
predicate that the institution thus diminished is in accordance
with the legislative intent. The adjustments of this law are
so interdependent that part of it cannot be retained and car-
ried into effect in the absence of any one of its substantial
provisions. The inquiry is manifestly controlled by the well-
known rule of construction applicable to cases of this class,
which is thus stated in a decision of this court in these words,
viz.: "If all the provisions of the act are so interwoven as to
be incapable of distinct separation, or are of such a character
that it cannot be said that the legislature intended that the
valid parts shall be enforced if the other parts fail, the entire
law will be held to be invalid."

This exception is overruled.

The second objection consists of a challenge to the array of
the jury, on the grounds, first, that the sheriff, in making up
the jury list, designedly excluded persons of color therefrom,
and failed to file in the Oyer a copy of the list of jurors sum-
moned by him.

With regard to the first of these contentions, the refutation
is threefold—*first*, that it was not shown that there was a
single colored man in the county of Somerset who was enti-
tled to serve as a juror; *second*, that there was no evidence
that any person of color was designedly excluded from the
jury in this case by the sheriff, or even that such person was
omitted except in the same way that white citizens not selected
were omitted; and *third*, that the entire matter being one of
fact was tried by the court by virtue of the statute. Such a
decision is not subject to review, as was settled in the case of
*Patterson* v. *State*, 19 *Vroom* 382.

We find no legal basis for the exception.

Another exception is founded on the fact that the sheriff
did not file in the court a list of persons summoned by him,
in accordance with the requirements of the statute.

The statutory provision referred to is plainly directory,

as was held by the trial judge. The failure of the officer to comply with the act in this respect has not and could not injuriously affect the defendant. That such statutory regulations are directory only was decided by this court in the case of *Gardner* v. *State,* 26 *Vroom* 17.

The objection is overruled.

The next fault alleged to have occurred at the trial relates to the admission of a certain particular of testimony.

The question was presented in this wise : certain witnesses testified to having seen certain footprints of a peculiar character in the dust and soil near to the body of the woman who had been murdered, and for the purpose of showing that such footprints had been made by this defendant, the state produced the boots that were shown to have been worn by the prisoner on the night in question. Certain impressions in sand, made in the presence of the jury by the boots just mentioned, were exhibited to the jury against objection taken by the counsel of the defendant.

Witnesses were then interrogated as to the similarity between these factitious impressions and those seen by them near the body.

The court has concluded that this testimony was unobjectionable. It was plainly competent for the witnesses who had seen the footprints to describe them to the jury, their dimensions, their shape, their peculiarities. For the purpose of such description, a photograph or a drawing could have been referred to. In the present instance the witnesses made a comparison of the real footprints as seen by them with the artificial prints made by the boot, which latter were undoubtedly genuine. The question was one of identity, and in such cases all that a witness can do is to express his opinion, and such expression of opinion, in this class of cases, is plainly admissible. The subject has been under judicial consideration on various occasions, and the rule as stated has been very generally applied. Thus, in *Commonwealth* v. *Dorsey,* 103 *Mass.* 412, on a trial for murder, the testimony of persons not experts was held admissible to the effect that " hairs on

a club appeared to the naked eye to be human hairs and resembled the hair of the deceased."

Many decisions can be found to the same effect.

This objection also cannot prevail.

The last contention is, in the language of the brief of counsel, " that legal guilt is not established, and that the circumstances proved are not inconsistent with any other rational conclusion than the guilt of the defendant."

With respect to this point we think it sufficient to say that, by force of the act of 1894, all the evidence in the case has been very carefully examined and considered by each member of the court, and our unanimous conclusion is that the verdict could not reasonably be other than it is.

The judgment, therefore, must be affirmed.