## COMANCHE LIGHT & POWER CO. v. NIX, *Sheriff*.

No. 4333. Opinion Filed March 14, 1916.

(156 Pac. 293.)

1. **STATUTES—Gross Revenue Tax—Validity of Statute.** That portion of section 2, c. 44, Sess. Laws 1910, imposing a gross revenue tax on corporations, which provides that public service corporations operating partly within and partly without the state shall pay a tax equal to such proportion of the per centum of its gross receipts, as thereinafter provided, as the portion of its business done within the state bears to the whole of its business, having been declared unconstitutional as an attempted regulation of commerce among the states (**Meyer, Auditor, v. Wells Fargo & Co.**, 223 U. S. 298, 32 Sup. Ct. 218, 56 L. Ed. 445), the remaining part of the statute, levying a tax on such corporations operating wholly within the state, cannot be sustained, being in contravention of the legislative purpose and intent, and therefore the entire act must be held invalid.

2. **TAXATION—Partial Invalidity—Gross Revenue Tax—Construction and Validity of Statute.** Chapter 44, Sess. Laws 1910, imposing a gross revenue tax, provides a comprehensive scheme of taxation, the parts of which, as respects those public service corporations operating wholly within the state, and those operating partly within and partly without the state, must be construed

according to the obvious legislative intent as a whole. Such construction precludes the belief that the Legislature would have enacted the statute independent of the part held unconstitutional.

3.    STATUTES—Partial Invalidity—Construction. The question as to whether portions of a statute which are constitutional shall be upheld while other divisible portions are eliminated as unconstitutional is primarily one of intention. If the objectionable parts of a statute are severable from the rest in such a way that the Legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional. If, however, the constitutional and the unconstitutional portions are so dependent on each other as to warrant the belief that the Legislature intended them to take effect in their entirety, it follows that, if the whole cannot be carried into effect, it will be presumed that the Legislature would not have passed the residue independently, and accordingly the entire statute is invalid.

(Syllabus by the Court.)

*Error from District Court Comanche County;*
*J. T. Johnson, Judge.*

Injunction by the Comanche Light & Power Company, a corporation, against Walter E. Nix, as Sheriff of Comanche County. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

*C. M. Myers, W. C. Stevens, S. P. Render, Stuart & Cruce,* and *Burwell, Crockett & Johnson,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *John B. Harrison,* Asst. Atty. Gen., for defendant in error.

SHARP, J. On May 26, 1908, there was enacted by the Legislature a statute providing for the levy and collection of a gross revenue tax from public service corporations in the state, and from persons, firms, corporations, or associations engaged in the mining or production

of coal, asphalt, or ores bearing lead, zinc, jack, gold, silver, or copper, or of petroleum or other mineral oil, or of natural gas. Sess. Laws 1907-08, c. 71, art. 2, pp. 640-645. Section 6 of article 2 of said statute was amended by an act approved March 27, 1909 (Sess. Laws 1909, c. 38, art. 2, pp. 624-626), section 2 of which amended act made provision that the taxes collected from gross revenues should be paid into the state treasury and credited to the general revenue fund of the state for the payment of the expenses of the state government. In 1910 the Legislature enacted a new statute, approved March 10th of said year, providing for the levy and collection of a gross revenue tax from the public service corporations of the state, and from persons, firms, corporations, or associations engaged in the mining or production of coal and other minerals, or of petroleum or other mineral oil, or of natural gas. Sess. Laws 1910, c. 44, pp. 65-70.

In *Meyer, Auditor, v. Wells Fargo & Co.*, 223 U. S. 298, 32 Sup. Ct. 218, 56 L. Ed. 445, the latter statute was attacked by the express company as unconstitutional on the ground that it was an attempted regulation by the state of commerce among the states. The contention was sustained; the court holding the act unconstitutional in that it was an attempt to tax the gross receipts of corporations engaged in interstate commerce, and which also received large sums as income from investments in bonds and lands, all outside of the state. Notwithstanding the opinion, it is claimed by the Attorney General that the statute, as it affects corporations operating wholly within the state, is separable from the portion stricken as unconstitutional, and therefore the former may stand, unaffected by the invalidity of the condemned part. In this connection it may be noted that plaintiff is, and was, during the

time in question, a domestic corporation engaged in the furnishing of electric light and power in the city of Lawton and adjacent territory within the state, and hence was not engaged in commerce among the states.

The sole question before us, as submitted both in the oral arguments and briefs of counsel, and as already indicated, is: May the statute providing for the levy and collection of a gross revenue tax be enforced as against public service corporations operating wholly within the state, notwithstanding the decision of the Supreme Court striking down a portion of the statute as unconstitutional? It is fundamental that one part of a statute cannot be declared void and leave any other part in force, unless the statute is so composite, consisting of such separable parts, that, when the void part is eliminated, another living, tangible part remains, capable by its own terms of being carried into effect, consistently with the intent of the Legislature which enacted it in connection with the void part. Lewis' Sutherland, Statutory Construction, sec. 297; *In re Commissioners of Counties Comprising Seventh Judicial District,* 22 Okla. 435, 98 Pac. 557; *Pioneer Telephone & Telegraph Co. v. State,* 40 Okla. 417, 138 Pac. 1033; *In re Gross Production Tax of Wolverine Oil Co., ante,* p. 24, 154 Pac. 362. If the court can see and say that the act, in the form in which it is left with the obnoxious portions excised, is still such an act as it may be presumed that the Legislature would have passed had it known that certain provisions were void, the remainder, under well-settled rules of construction, may stand. *Dwyer v. Parker, Auditor,* 115 Cal. 544, 47 Pac. 372; *Lawton v. Steele,* 119 N. Y. 226, 23 N. E. 878, 7 L. R. A. 134, 16 Am. St. Rep. 813, affirmed in 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385; *Chicago, B. & Q. R. Co. v. Jones,* 149

Ill. 361, 37 N. E. 247, 24 L. R. A. 141, 41 Am. St. Rep.
278; *Rothermel v. Meyerle,* 136 Pa. 250, 20 Atl. 583, 9
L. R. A. 366; *Branch v. Lewerenz,* 75 Conn. 319, 53 Atl.
658; *English v. State,* 31 Fla. 340, 12 South. 689; *Newman
v. People,* 23 Colo. 300, 47 Pac. 278.

On the other hand, if it is obvious that the Legisla-
ture did not intend that any part should have effect unless
the whole, including the part wholly void, should operate,
then holding a part void invalidates the entire statute.
As said in *Johnston v. State,* 59 N. J. Law, 271, 273, 35
Atl. 787, affirmed 59 N. J. Law, 535, 37 Atl. 949, 39 Atl.
646, 38 L. R. A. 373:

"If all the provisions of an act are so interwoven as
to be incapable of distinct separation, or are of such a
character that it cannot be said that the Legislature in-
tended that the valid parts shall be enforced if the other
parts fail, the entire law will be held to be invalid."

To the same effect is the case of *Connolly v. Union
Sewer Pipe Co.,* 184 U. S. 540, 565, 22 Sup. Ct. 431, 441
(46 L. Ed. 679), where it is said:

"But, if an obnoxious section is of such import that
the other sections without it would cause results not con-
templated or desired by the Legislature, then the entire
statute must be held inoperative."

As said by Mr. Chief Justice Fuller, in *Pollock v.
Farmers' Loan & Trust Co.,* 158 U. S. 601, 15 Sup. Ct.
912, 39 L. Ed. 1108:

"It is elementary that the same statute may be in part
constitutional and in part unconstitutional, and, if the
parts are wholly independent of each other, that which is
constitutional may stand, while that which is unconstitu-
tional will be rejected."

Quoting, with approval from the rule announced by Chief Justice Shaw in *Warren v. Charlestown*, 2 Gray (Mass.) 84, the court proceeds:

"If the different parts 'are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant a belief that the Legislature intended them as a whole, and that, if all could not be carried into effect, the Legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.'"

As stated in *Poindexter v. Greenhow*, 114 U. S. 270, 304, 5 Sup. Ct. 903, 922, 29 L. Ed. 185:

"It is undoubtedly true that there may be cases where one part of a statute may be enforced as constitutional, and another be declared inoperative and void because unconstitutional; but these are cases where the parts are so distinctly separable that each can stand alone, and, where the court is able to see and to declare, that the intention of the Legislature was that the part pronounced valid should be enforceable, even though the other part should fail. To hold otherwise would be to substitute for the law intended by the Legislature one they may never have been willing by itself to enact."

And again, as said in the case of *Spraigue v. Thompson*, 118 U. S. 90, 95, 6 Sup. Ct. 988, 900, 30 L. Ed. 115, 117, where it was urged that certain illegal exceptions to a section of a statute might be disregarded, but that the rest could stand:

"The insuperable difficulty with the application of that principle of construction to the present instance is that by rejecting the exceptions intended by the Legislature of Georgia the statute is made to enact what confessedly the Legislature never meant. It confers upon the statute a positive operation beyond the legislative intent, and be-

yond what any one can say it would have enacted in view of the illegality of the exceptions."

The effect to be given to a statute a part of which has been declared unconstitutional is considered in Cooley's Constitutional Limitations, pp. 246-250, where the author says in part:

"Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the court to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the Legislature would have passed the one without the other. * * * And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature intended them as a whole, and if all could not be carried into effect the Legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them."

Turning to the statute, we find that by section 7702, Comp. Laws 1909 (which differs but slightly from section 7460, Rev. Laws 1910), it is provided that:

"Every corporation hereinafter named shall pay the state a gross revenue tax for the fiscal year ending June 30th, 1909, and for each fiscal year thereafter, which shall be in addition to the taxes levied and collected upon an *ad valorem* basis upon the property and assets of such corporation equal to the percentum of its gross receipts hereinafter provided if such * * * corporation operates wholly within the state; and if such public service corporation operates partly within and partly without the state it shall pay a tax equal to such proportion of said percentum of its gross receipts as the portion of its busi-

ness done within the state bears to the whole of its busi-ness."

It will be noted that the language of the section is:

"Every corporation hereinafter named shall pay the state a gross revenue tax" equal to the percentum of its gross receipts as fixed in the succeeding section.

The legislative purpose, it is manifest, was to tax all, and not a part, of those within the statute. Notwith-standing this, we are asked to say that the Legislature would have enacted the statute in its emasculated form had it then been known that its provisions would fail as to transportation or transmission companies, or sleeping car companies, stock car companies, refrigerator car companies, and other private car associations, car trusts, and car companies, persons, firms, associations, companies, or corporations engaged in the express business, and telephone and telegraph companies, engaged in business partly within and partly without the state.

We do not believe that the Legislature intended to place upon corporations doing business wholly within the state burdens greater than those imposed upon corporations doing an interstate business; at least there is nothing in the statute or in the current history of the times that justifies the conclusion. The effect of the decision in the express company case was to relieve from the burden of this tax many agencies which it was intended by the Legislature to reach. By counsel it is estimated that from 80 to 90 per cent. of the tax sought to be imposed cannot, under the opinion in the express company case, be collected. Whether this estimate is correct or not, it must be admitted that a very large portion, if, indeed, not the major part, of the taxes sought to be collected from the sources

named in the statute is lost to the state. The question confronting us was before the court in *Pollock v. Farmers' Loan & Trust Company, supra,* where it was said:

"According to the census, the true valuation of real and personal property in the United States in 1890 was $65,037,091,197, of which real estate with improvements thereon made up $39,544,544,333. Of course, from the latter must be deducted, in applying these sections, all unproductive property and all property whose net yield does not exceed $4,000; but, even with such deductions, it is evident that the income from realty formed a vital part of the scheme for taxation embodied therein. If that be stricken out, and also the income from all invested personal property, bonds, stocks, investments of all kinds, it is obvious that by far the largest part of the anticipated revenue would be eliminated, and this would leave the burden of the tax to be borne by professions, trades, employments, or vocations; and in that way what was intended as a tax on capital would remain, in substance, a tax on occupations and labor. We cannot believe that such was the intention of Congress. We do not mean to say that an act laying by apportionment a direct tax on all real estate and personal property, or the income thereof, might not also lay excise taxes on business, privileges, employment, and vocations. But this is not such an act; and the scheme must be considered as a whole. Being invalid as to the greater part, and falling, as the tax would if any part were held valid, in a direction which could not have been contemplated except in connection with the taxation considered as an entirety, we are constrained to conclude that sections 27 to 37, inclusive, of the act * * * are wholly inoperative and void."

What was there said applies with equal force here. To say that the Legislature intended, notwithstanding the plain language of the statute, that in any event those corporations doing business wholly within the state should pay the tax, while the great majority of the transporta-

tion and transmission and other companies doing an inter-state business should be relieved of its onerous provisions, would be to impute to the Legislature a purpose violative of the spirit, if not the letter, of the organic law, requir-ing that taxes shall be uniform upon the same class of subjects. The statute provided a comprehensive scheme or system of taxation, binding alike on all within its terms. As it remains, the result aimed at cannot be ac-complished, for there can be no room for doubt that the destruction of the part of the statute stricken down would produce results neither contemplated nor desired by the Legislature. When such is the case, the only thing that remains is to hold the remainder of the statute inoperative and void.

As said in 6 R. C. L., sec. 122, p. 123:

"The question as to whether portions of a statute which are constitutional shall be upheld while other divis-ible portions are eliminated as unconstitutional is pri-marily one of intention. If the objectionable parts of a statute are severable from the rest in such a way that the Legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional. If, however, the constitutional and the unconstitutional portions are so dependent on each other as to warrant the belief that the Legislature in-tended them to take effect in their entirety, it follows that, if the whole cannot be carried into effect, it will be pre-sumed that the Legislature would not have passed the residue independently, and accordingly the entire statute is invalid. This is simply another way of stating the familiar rule that, if the parts of a law are divisible, and some of them are constitutional, and others not, the con-stitutional provisions cannot be held valid if it appears that they would not have been adopted without the other

parts. * * * The portion which remains should express the legislative will independently of the void part. Where the enforcement of portions of a statute after the elimination of unconstitutional sections would produce results not contemplated or desired by the Legislature, the entire statute is usually held to be inoperative and void."

Speaking to a like provision, it was said in the express company case:

"But we see no possible construction on which it could be upheld without being so remodeled that it would be a mere speculation whether the Legislature would have passed it in the new form. * * * It is a tax on a proportion of the total gross receipts, a considerable part of which as we have explained, the state has no right to tax. Neither the court below nor this court can reshape the statute simply because it embraces elements that it might have reached if it had been drawn with a different measure and intent."

The judgment of the lower court is therefore reversed, and the cause remanded, with instructions to proceed in accordance with the views herein expressed.

All the Justices concur.