## No. 33,499

E. C. DAY, Sheriff of Cowley County, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF COWLEY and THE STATE OF KANSAS, *Defendants.*

(71 P. 2d 871)

Opinion filed October 9, 1937.

*W. L. Cunningham, D. Arthur Walker* and *Wm. E. Cunningham,* all of Arkansas City, for the plaintiff.

*Earle Wright,* county attorney, and *John A. Herlocker,* assistant county attorney, for the defendants.

The opinion of the court was delivered by

WEDELL, J.: This is an original proceeding in mandamus by the sheriff of Cowley county, against the board of county commissioners of that county to compel it to—

(a) Allow and pay him as sheriff not less than sixty cents or more than seventy-five cents per day for boarding each prisoner in the county jail;

(b) Allow plaintiff one dollar per day for attending jail;

(c) Furnish light, heat and water for the jail building, including that part occupied by the jailer, deputy or sheriff in charge of the prisoners;

(d) Permit the sheriff to use that part of the jail building which was originally built and has been maintained for the use of the sheriff or jailer without being required to pay rent to the county therefor.

By reason of a joint request for an early decision, the above questions were answered on July 22, in a memorandum opinion as follows: (a) Fifty cents; (b) Yes; (c) Yes; (d) Yes.

The parties had stipulated as follows:

"1. That Cowley county has a population of 37,800, and more than twenty years ago constructed a brick building and quarters therein for the keeping of prisoners.

"2. That the average number of prisoners kept in said building continuously from day to day for the last two years has been twenty prisoners per day; that the average number of prisoners doing road work continuously from day to day for the last two years has been eight.

"3. That the number of incorporated cities in Cowley county and their approximate population is as follows: Arkansas City, 13,000; Winfield, 9,000; Burden, 555; Udall, 466; Dexter, 448; Atlanta, 341; Cambridge, 259; and Geuda Springs, 52.

"4. That the different sheriffs of Cowley county for the last twenty years have used the said jail as living quarters for themselves and their families.

"5. That for the past two years the sheriff of Cowley county has continuously employed two deputies to act as day and night jailers."

We shall now treat the questions as originally raised and in the order stated. For convenience we shall refer to the board of county commissioners as defendants.

(a) How much per day is the sheriff of Cowley county entitled to receive for boarding prisoners?

The answer involves a consideration of G. S. 1935, 28-106, and Laws of 1937, chapter 229, section 1. Plaintiff contends he is entitled to not less than sixty cents nor more than seventy-five cents per day. His contention rests on the provisions of G. S. 1935, 28-106, the pertinent portions of which read:

"The sheriffs of the several counties of the state shall receive, as full compensation for their services as such sheriff, to be allowed by the board of county commissioners of their respective counties, the following salaries:

. . . . . . . . . . . . . . . . . . . . . .

"And provided further, That the said sheriff shall receive for boarding prisoners a sum of not less than sixty cents or more than seventy-five cents per

day for each prisoner, the amount per day to be determined by the board of county commissioners."

Defendants rely upon chapter 229, section one, of the Laws of 1937, which is the same on the point in issue as G. S. 1935, 28-110. The pertinent portions thereof read:

"The sheriffs of the several counties in the state shall charge for the services required by law to be performed by them the following fees:

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"For boarding and lodging of each prisoner or prisoners, per day, exclusive of lights, furniture, fuel, and bedding, where jail is provided, to belong to the sheriff, $0.50."

In 1913 a general fees and salary act was passed repealing specific statutes on the subject and all acts and parts of acts in conflict therewith. Chapter 197, section 8, of the Laws of 1913, contained only the salary provision for sheriffs of the various counties. It ultimately became the present salary statute, to wit, G. S. 1935, 28-106. It must be noted that section 12 of chapter 197 of the Laws of 1913 contained only *fee* provisions for sheriffs, and they embraced the fee for the boarding and lodging of prisoners. The fee was fixed at fifty cents per day. It is now the fee statute, Laws of 1937, chapter 229, section 1. The fee statute remained unchanged until 1937, and appeared as G. S. 1935, 28-110. When amended in 1937 no change was made relative to the fee for boarding and lodging prisoners. It remained at fifty cents per day. The salary section of the 1913 act, being section 8, was amended by chapter 222 of the Laws of 1915, as to salary, and the 1915 salary section was again amended by chapter 192 of the Laws of 1917. Of course, these amendments contained no provision as to sheriffs' fees for the simple reason that sections amended dealt only with salaries, and hence there was no fee provision in those sections to amend.

In 1919, however, when the 1917 salary provision was again amended by chapter 200, section 1, Laws of 1919, the legislature simply inserted a provision for boarding prisoners and fixed the fee at not less than sixty cents nor more than seventy-five cents per day, to be determined by the county commissioners. In 1921 the salary provision of the 1919 act was again amended by section 1 of chapter 186 of the Laws of 1921, and the same fee provision for boarding prisoners was included. As previously stated, this is the present salary section of our law (G. S. 1935, 28-106), and it is the section upon which plaintiff relies. His contention cannot be sustained. Clearly there was no boarding or lodging provision in

the 1917 salary act to amend. The provision for boarding and lodging of prisoners and the fixing of a fee therefor was not germane to the subject to which the amended act was restricted, to wit, the fixed salary of the sheriff. The only boarding and lodging provision was contained in the Laws of 1913, chapter 197, section 12. That section of the 1913 act, as to the question here involved, has never been amended. It still fixes the fee at fifty cents per day and it must control.

We are reminded the sheriff is required to supply prisoners with wholesome food and in sufficient quantities. (G. S. 1935, 28-109.) We are not unmindful of these provisions nor concerning the practical problems which are or may become involved in the faithful performance thereof. We are not permitted, however, to increase the amount the legislature has seen fit to provide for such expenditures. The redress, if any is to be obtained, must be sought through the lawmaking bodies and not through the courts.

(b) Is the sheriff entitled to one dollar per day for attending jail when occupied by a prisoner or prisoners?

The necessary occupancy is conceded by stipulation. (Par. 2.) G. S. 1935, 28-110, provides:

"The sheriffs of the several counties in the state shall charge for the services required by law to be performed by them the following fees:

. . . . . . . . . . . . . .

"For attending jail when occupied by prisoner or prisoners, per day, to belong to the sheriff, $1."

Does the fact a deputy or deputies are acting as jailers deprive the sheriff of the statutory fee allowed him for attending jail? Defendants concede the sheriff is entitled to additional deputies where existing deputy hire is insufficient to properly expedite the business of the sheriff's office (G. S. 1935, 28-106), but they contend he is not entitled to the above fee where deputies are employed as jailers. The contention cannot be sustained. The statute makes no such exception and we are not permitted to arbitrarily read one into it. For this reason, if for no other, we are obliged to uphold the plain mandate of the statute. There are, however, other manifest reasons for believing the legislators intended the sheriff should be entitled to such fee, notwithstanding he had the assistance of deputies, in the performance of necessary functions about the jail. The proper management and conduct of a jail consists of something more than merely incarcerating a prisoner and preventing a jail-break. It requires the complete supervision and adequate

superintending of the entire institution. It demands, among other things, the protection of the building and its equipment, sanitation to prevent disease, the furnishing of adequate food, water and sleeping quarters, the proper segregation of prisoners, the assurance of the best possible moral conditions of which the place will permit, and the humane treatment of prisoners calculated to promote their reformation. These are among the statutory duties with the performance of which the sheriff is charged. Though deputies may be allowed to assist him in the execution of these duties, the responsibility is his and it cannot be shifted. For their performance he remains liable.

G. S. 1935, 19-811, provides:

"The sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable."

The pertinent portion of G. S. 1935, 19-1903, provides:

"The sheriff of the county by himself or deputy shall keep the jail, and shall be responsible for the manner in which the same is kept."

The law imposes duties of a high personal character upon the sheriff.. Their sincere performance has, in the definite knowledge of some of us, given many a youth a lift onto a better road of life. G. S. 1935, 19-1919, reads:

"All prisoners shall be treated with humanity, and in a manner calculated to promote their reformation. Juvenile prisoners shall be kept, if the jail will admit of it, in apartments separate from those containing more experienced and hardened criminals. The visits of parents and friends who desire to exert a moral influence over them shall at all reasonable times be permitted."

The sheriff is charged with the responsibility of the faithful performance of all the foregoing duties, whether fully discharged by him in person or partly by a deputy. Before a sheriff may be compensated and paid for the care and maintenance of prisoners he, and not a deputy, is required to make an oath concerning the discharge of his duties in definite particulars. G. S. 1935, 28-109, provides:

"Before any sheriff shall be allowed and paid any part of the fees provided by law for the care and maintenance of any prisoner, such officer shall make an oath and attach the same to the bill therefor presented to the board of county commissioners to the effect that said prisoners were kept in a cleanly manner, provided with clean beds, pillows, wholesome food, pure water and plenty of it, and that such were fed at a clean table, in suitable, proper dishes:

*Provided further,* That in case of desperate characters, they may be fed in their cells, *at the discretion of the sheriff."* (Italics inserted.)

Here again we find the sheriff is required to exercise his discretion. The responsibility is his, and not that of a deputy who is acting in the capacity of a jailer.

The management and supervision of a county jail is a part of the official business of the sheriff's office. The functions of supervision and management and the responsibility therefor constitute a highly essential part of the sheriff's official duties. There is no indication the sheriff is not attending to these duties. In view of the various statutory provisions, it is clear the lawmakers did not intend to deprive the sheriff of his statutory fee of one dollar per day for attending jail if or when deputies became necessary to properly expedite the business of the sheriff's office.

The issue of whether the sheriff is entitled to a day and night jailer was not originally stressed in this case. Certainly that question was not definitely presented as one of the four issues to be determined. That the sheriff was entitled to employ such jailer under the provisions of G. S. 1935, 28-106, was at least inferentially conceded by defendants. Subsequent to the announcement of the memorandum opinion, we are informed by plaintiff that defendants have threatened to discharge a deputy who is acting as a night jailer and we are asked to restrain defendants from discharging such jailer until this court shall determine whether the sheriff is entitled to a day and night jailer. The question presents an issue of far-reaching importance. We are not fully informed as to the contentions of the respective parties concerning it. The interests of justice and orderly procedure will be best conserved by an appropriate independent action in which the necessary evidence can be fully presented and the issue determined. We therefore decline to express a view upon the subject now.

(c) Is the county of Cowley required to furnish heat, light and water for the jail building, including that part occupied by the jailer, deputy or sheriff in charge of the prisoners?

(d) Is the sheriff of Cowley county entitled to use that part of the jail building which was originally built and has been maintained for the use of the sheriff or jailer without being required to pay rent to the county?

The two preceding questions may be treated together. They were both answered "yes." According to the stipulation, sheriffs of

Cowley county and their families have occupied the county jail as living quarters for the last twenty years. Both parties have cited the case of *Norton v. Simms*, 85 Kan. 822, 118 Pac. 107, as authority for their respective contentions. It was there held:

"Under the governing statute the jail of Shawnee county is to be maintained at the expense of the county and the county is liable to the sheriff for necessary repairs and for necessary supplies, such as furniture, bedding, light, heat, water, disinfectants, soap, toilet necessities, mops, brooms and matches.

"Such repairs and supplies are not included within the term 'boarding and lodging,' for which a specific compensation is fixed by the statute.

"The rooms occupied by the jailer, in pursuance of the statute, constitute a part of the jail, and the county is liable for the maintenance of the entire institution." (Syl. ¶¶ 1, 2, 3.)

Defendants contend that according to the opinion in the Simms case the county was required to furnish the necessary utilities and equipment for that portion of the jail occupied by the jailer, because the jailer was in constant attendance at the jail twenty-four hours each day and maintained his residence therein, while in the present case the jailers live in their private homes and the jail is occupied by the sheriff, who is not serving as a jailer. The contention is untenable. While such a contention might have merit in some instances it cannot be sustained here. The citizens of Cowley county years ago prevailed upon the state legislature to grant them authority to erect a new sheriff's residence and county jail to be combined in one building and also asked authority to furnish and equip the residence of the sheriff in the jail building. That authority was granted. (Laws 1905, ch. 164; Laws 1908, ch. 38.) Provision was made for levying taxes to pay the expense of erecting, equipping and furnishing the sheriff's residence. No provision was made for exacting rent from the sheriff by reason of his residence therein. We assume the arrangement was designed for the efficient management and supervision of the jail and for the protection of the public interest rather than as a favor to the sheriff. Under the arrangement a sheriff is conveniently located for the general supervision of the jail and for emergencies which may arise therein. The contention the sheriff is not entitled to the services and furnishings enumerated in questions (c) and (d), merely because he does not perform all the tasks incident to the operation of the jail, is not in harmony with legislative intent nor with a practical view concerning the performance of his numerous statutory duties. Were he required to give attention to all the detailed duties of a night jailer,

he would be unavailable for the various police duties which demand the prompt attention of. an efficient sheriff at night and physically and mentally unfit to properly perform the functions of his office in the daytime.

Plaintiff asks for the allowance of an attorney's fee to be taxed as costs. This is a proceeding- in mandamus against a board of county commissioners, and involves the expenditure of public funds. The faithful performance of official duties requires not only that officials proceed with caution relative to such expenditures but that they remain within the limitations fixed by law. This was the essential purpose of the budget and cash-basis law. When in reasonable doubt public officials are not only entitled to have such doubt resolved for their own assurance but the public interest also will be advanced thereby. Where public officials act reasonably and in good faith, although defeated in a mandamus proceeding, they are properly relieved from personal liability for costs and damages. (*Cates v. Knapp,* 104 Kan. 184, 186, 187, 178 Pac. 447; *State, ex rel., v. Bone,* 125 Kan. 818, 838, 266 Pac. 85; *Kittredge v. Boyd,* 136 Kan. 691, 700, 18 P. 2d 563.) The rule, of course, is otherwise where the official acts arbitrarily, unfairly or oppressively. He then becomes a wrongdoer and subject to the liabilities of a wrongdoer. (*Hicks v. Davis,* 100 Kan. 4, 163 Pac. 799; *King v. Wooster,* 111 Kan. 625, 627, 208 Pac. 654.) In the instant case the writ sought by plaintiff is allowed only in part. The record before us discloses no bad faith, but rather a reasonable doubt on the part of members of the board of county commissioners relative to the questions involved, and the request for the allowance of an attorney's fee to be taxed as costs must be denied. The clerk of this court is directed to tax the costs equally against the board of county commissioners and the sheriff.

The writ is allowed in part and denied in part, according to the views herein expressed.