CARTER, State Auditor, v. MILEY.

No. 29342. June 25, 1940.

*103 P. 2d 933.*

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, First Asst. Atty. Gen., for plaintiff in error.

Robert M. Williams and Miley, Hoffman, Williams, France & Johnson, all of Oklahoma City, for defendant in error.

RILEY, J. In this appealed mandamus action John H. Miley seeks to enforce collection of a $2,500 attorney fee, under contract with the State Highway Commission pursuant to authority, if any, granted by article 10, ch. 50, S. L. 1937, whereby a thirty-five million dollar road note indebtedness was sought to be authorized.

This court, in Boswell v. State, 181 Okla. 435, 74 P. 2d 940, held unconstitutional the attempted issuance of the notes, but expressly reserved the question of payment of this attorney fee. The services were fully performed. This court followed the procedure prescribed in the stated act to the point of holding invalid the issue of notes. The learned and distinguished trial judge ruled that it was the intent of the Legislature to pay expenses of proceedings regardless of final action upon the main issue.

It was the purpose of the act to complete a highway system in co-operation with the federal government and to issue, as a means of financing cost, thirty-five million dollars in highway revenue anticipation notes to be liquidated by specific revenue allocated to a special fund. There was serious question as to the validity of such an enterprise, and so to safeguard the good faith and credit of the state there was provided, by section 9 of the act, a special procedure to test the legality of the matter before this court.

Secion 15 of the act set apart out of the Highway Construction and Maintenance Fund, $35,000 to pay these preliminary costs and attorney fees. Employment of a special attorney was authorized, and under this authority plaintiff below, defendant in error, was duly employed to assist the Attorney General in the legal work involved. By resolution it was agreed to pay plaintiff a cash retainer of $2,500 regardless of the ultimate validity of the proposed notes. No issue is made as to the amount of attorney fee now sought nor as to the character of services rendered. The Highway Commission has audited, approved, and forwarded the claim to the State Auditor, who has rejected the same for reasons herein considered.

It is admitted that the fund sought to be applied is sufficient for payment. Likewise it is urged that publication costs, as a preliminary cost, are shown in the Boswell Case to have been allowed by this court.

It is urged by the appellant, for reversal, that:

1. The State Auditor has authority to question plaintiff's claim. We shall assume this to be true.

2. That the act, supra, is not severable, and the adjudicated unconstitutionality of the note issuance provisions necessarily renders void the provisions of the act authorizing payment of costs of the special attorney.

3. That payment of the claim out of the Highway Construction and Maintenance Fund would constitute an unlawful diversion of funds contrary to the purpose for which they exist.

4. Failure to show unencumbered cash in said fund at the time of attorney's contract.

5. Absence of a valid appropriation with which to pay the claim.

6. Immunity of the state from this suit (no consent being granted), and

7. Assessment of cost in the instant proceeding.

The vital issue presented is whether the Legislature in enacting article 10, ch. 50, S. L. 1937, intended that expenses incident to the judicial inquiry as to the validity of anticipation notes should be paid regardless of the outcome of the judicial inquiry.

In other words, while this court determined that the notes to be issued pursuant to the act would be invalid, did the Legislature, by the act, intend to pay for the labor and cost it set up for the determination of the result?

Section 17 of the act expressly declared the legislative intent and desire

that various provisions of the act be severable so that invalidity of a part of the act would not affect or impair remaining portions. However, this "severability" was not mentioned in the title, and it is upon this fact and the additional provision for reimbursement of the construction and maintenance fund as contained in section 15 of the act that appellant relies. It is urged that the reimbursement provisions made to provide a restoration of the expense provided, from a sale of the notes, so bound up the validity of the notes with the provision for expense, that the invalidity of the one destroyed the other, so that it cannot now be said there exists an unconditional appropriation with which to pay the claim here involved.

We fail to find contained in words or thought of the act that a compliance with the primary duty to pay is conditioned upon the secondary direction to restore. Had the Legislature intended that expenses herein considered should only be paid out of proceeds of the notes, it could easily have said so, but, to the contrary, it set up a procedure and appropriated money to carry out that procedure, step by step, and to pay therefor as progress was made, and finally to adjust by reimbursement payment made as provided. This, as we view it, was a definite appropriation out of an existing available cash fund with but a proviso for adjustment between funds in event the additional one became available. The provision in no wise clouds intention of the Legislature that payment of cost be made.

In 25 R. C. L. 1029, the rule is stated that:

"A state statute or act of Congress will be construed, if possible, so as not to convict the state or the United States of a breach of good faith."

The rule of severability as testing validity of a portion of an act where other parts are void "is primarily one of intention." Parval Inv. Co. v. State, 71 Okla. 121, 175 P. 514; Comanche L. & P. Co. v. Nix, 53 Okla. 220, 156 P. 293. See, also, Oklahoma Natural Gas Co. v.

State, 187 Okla. 164, 101 P. 2d 793; State ex rel. Hudson v. Carter, 167 Okla. 32, 27 P. 2d 617, quoting 59 C. J. sec. 206.

While considering all rules applicable to the facts involved, it is certain that the Legislature did not know of the invalidity of the note provision, but upon this it progressed to a point of doubt, and through an abundance of precaution sought a test in a forum of last resort, and for the expenses of this, did its utmost to provide payment for just claims with adjustment provisions relating to state funds.

It seems clear that provisions of the act providing judicial determination of validity of the notes and making appropriation out of the highway construction and maintenance fund to pay the expense, including attorney's fee, must be given effect. We are assured of our correct conclusion by the legislative declaration that provisions of the act are severable. State ex rel. Roth v. Waterfield, 167 Okla. 209, 29 P. 2d 24; Sterling Refg. Co. v. Walker, 165 Okla. 45, 25 P. 2d 312.

Is this convincing legislative declaration of intention removed by failure of its mention in the title?

No case is cited where the matter of severability is required to be mentioned in the title.

Section 57, art. 5, Constitution, restricts acts, with definite exceptions, to a single subject, which is required to be clearly expressed in title.

A severability clause of an act produces no legislation, but expresses an intent to aid courts in determining the legislative will. Dorchy v. Kan., 264 U. S. 286, 68 L. Ed. 686.

Such a clause is a mere detail, incidental, but germane to the subject matter of legislation. Perry v. Carter, State Auditor, 173 Okla. 267, 48 P. 2d 278.

Judges cannot be blind to that which everyone knows, consequently this legis-

lative intent, fully expressed in the body of the act, forces upon us consideration of the legislative will that every feature of the act be sustained regardless of every other feature's validity irrespective of failure to mention the severability clause in the title. We hold according to the expressed legislative will.

It is urged that payment of this claim would violate section 19, art. 10, Constitution, in the part that specifies:

"* * * and no tax levied and collected for one purpose shall ever be devoted to another purpose."

Assuming, contrary to early rule as expressed in McGannan, Adm'x, v. State, 33 Okla. 145, 124 P. 1063, applicability of the constitutional inhibition to other than annually recurring taxes, and with full knowledge that the State Highway Construction and Maintenance Fund is a definite one for use on the state highways, nevertheless we conclude that the fund is not restricted in expenditure to highway labor and material, but may be used for the general purpose for which it exists.

In Helm v. Childers, 181 Okla. 535, 75 P. 2d 398, we held adversely to appellee's contention, and that the Highway Commission had authority to promote highway improvement and maintenance. In the case at bar there was an effort to validate notes in furtherance of highway development. Failure of the enterprise is of no moment. The purpose was within general uses to which the Highway Construction and Maintenance Fund might be put.

See, also, purposes to which this fund may be devoted as provided by chapter 50, S. L. 1937, which includes "all other obligations incurred or authorized pursuant to any specific provision of law * * * arising out of contracts * * * and for the purpose of securing federal aid," etc.

It may be that, irrespective of and disregarding the special appropriation set up by section 15 of the act, supra, the language denoting the purpose of the State Highway Construction and Maintenance Fund is broad enough to authorize the payment of plaintiff's claim, but we need not rest our decision on this notwithstanding that the Legislature specifically authorized the Highway Commission to employ plaintiff and thus gave the status of his claim some standing as an operating expense against the specific fund under consideration.

We find, and hold, that by payment of this claim there would be no diversion of funds as contemplated by section 19, art. 10, Constitution.

It is urged that the claim fails because of failure to show an unencumbered cash balance in the fund sought to be applied at the time of contract. This is a "cash" fund, but doubtless the Highway Commission can, within authority of current appropriations, contract in anticipation of revenues provided.

Herein as in Graham v. Childers, 114 Okla. 38, 241 P. 178:

"The sovereign speaks through its legislative body, and the legislative body determines the policy of the sovereign, which has no limitation as to expenditures, save and except those which are expressly placed on its exercise by the Constitution of the state."

Section 55, art. 5, Constitution, relied upon, does require that every appropriation shall distinctly specify the sum appropriated, but herein are two appropriations, the general appropriation of the whole Highway Construction and Maintenance Fund, and a specific allocation out of that fund to pay such a claim as presented. As in Edwards v. Childers, 102 Okla. 158, 228 P. 472, cited and quoted, this is sufficient.

But it is urged that "if notes cannot be issued against such revenue," Boswell v. State, 181 Okla. 435, 74 P. 2d 940, "contracts cannot be entered against such revenue until it is actually on hand." The distinction is that the notes were not made payable out of any current appropriation within the biennium, but were future obligations to be liqui-

dated by the income of future years. That was a debt in an amount exceeding constitutional limitations. Not so as to the claim presented. Schmoldt v. Bolen, 183 Okla. 191, 80 P. 2d 609; Helm v. Childers, supra.

This contention is without merit and we have seen that there is a valid appropriation against which defendant is authorized to issue a warrant in payment of this claim.

This is not a suit against the state in the nature of Love v. Filtsch, 33 Okla. 131, 124 P. 30, concerning a private contract for rent, but mandamus is available as shown by numerous decisions to compel the State Auditor to issue warrants, where plaintiff shows a clear legal right to such relief. Edwards v. Carter, 167 Okla. 287, 29 P. 2d 610; State ex rel. v. Carter, 170 Okla. 50, 39 P. 2d 134.

Cost assessed in this action against a state officer is sought by plaintiff to be measured by Dickey v. State, 90 Okla. 106, 217 P. 145.

However, there is authority sustaining the view of the Attorney General that where the action is against one in an official capacity, as here, to require payment of money out of the State Treasury, and no individual liability is urged against the officer refusing payment, the officer will not be mulcted in cost or attorney fees in the absence of malice, oppression, or willful misconduct. Hicks v. Davis, St. Auditor, 100 Kan. 4, 163 P. 799.

Within an apparent discretion we are not willing to hold the State Auditor liable for cost simply because of error in refusing to honor a questionable claim. Having acted in good faith, this officer is to be relieved of costs. Day v. Board Com'rs, etc., 146 Kan. 492, 71 P. 2d 871; Shupert v. Ingham, Co. Treas., 214 Mich. 333, 183 N. W. 57.

The judgment is modified so the respective parties may bear their own costs, and, as modified, affirmed.

WELCH, V. C. J., and OSBORN, HURST, DAVISON, and DANNER, JJ., concur. BAYLESS, C. J., and CORN and GIBSON, JJ., absent.