VETERANS OF FOREIGN WARS v. CHILDERS, State Auditor, et al.

No. 32331.   June 29, 1946.

*171 P. 2d 618.*

L. J. Bicking, of Tulsa, for plaintiff.

Randell S. Cobb, Atty. Gen., Ewing C. Sadler, Asst. Atty. Gen., and Fred Hansen, First Asst. Atty. Gen., for defendants.

PER CURIAM. This action tests the legality and validity of an appropriation made by the State Legislature to the Veterans of Foreign Wars, S.B. 245, S.L. 1945, page 436. The State Auditor, the State Treasurer, and the Attorney General took the position that the appropriation was not legal and valid, and thereupon approval of presented claims was denied. The claims were in proper form and mandamus should be granted if the appropriation is legal and valid, and must be denied if the illegality and invalidity of the appropriation is shown.

For the defendants it is contended that an appropriation in this form and substance, and that this appropriation, is prohibited by, and is violative of, several provisions of our Constitution;

and that since this is the first time any effort has been made to make an appropriation to such a corporation rendering such services the appropriation act should be carefully measured by the various provisions of the Constitution.

Among other constitutional provisions relied upon it is expressly urged that this appropriation act is in violation of sections 14 and 15 of article 10.

The pertinent portion of section 14, supra, provides, "Taxes shall be levied and collected by general laws and for public purposes only. . . ."

The pertinent portion of section 15 provides:

"The credit of the State shall not be given . . . to any individual, company, corporation, or association, . . . nor shall the State . . . make donation by gift . . . to any company, association or corporation."

There is no issue or controversy as to any fact, and insofar as we refer to any fact situation, foundation therefor will be the pleadings of the parties and statements made in oral argument.

The named beneficiary of this appropriation, The Veterans of Foreign Wars, is a corporation created a number of years ago under the laws of the United States, 36 U. S. C. A. §§ 111 to 120. Among other stated wholesome and worthwhile purposes is the purpose to assist worthy comrades of the armed services and their relatives and dependents. For some years the organization has functioned well in the nation and in Oklahoma, and among its activities has maintained service agents at various points in the state, and has maintained at Muskogee a service agent rendering service to claimants who had business there with and before the Federal Veterans Administration.

It was in connection with, and by way of assistance to, this last stated function or activity, that this appropriation was made.

The title of the act adopted by the Legislature reads as follows:

"An act making appropriations to the Veterans of Foreign Wars for the employment of a service officer to assist members of the armed forces, veterans, their families and dependents, and to pay other expenses necessary and incident to such service work and declaring an emergency."

And the first sentence of the body of the act, the sentence which completely makes the appropriation, reads as follows:

"In order to assist members of the armed forces, veterans, their families and dependents, to obtain the benefits of Federal and State legislation enacted in their behalf, there is hereby appropriated to the Veterans of Foreign Wars, Department of Oklahoma, out of the State General Revenue Fund the sum of Five Thousand Dollars ($5,000.-00) for the fiscal year ending June 30, 1946, and the sum of Five Thousand Dollars ($5,000.00) for the fiscal year ending June 30th, 1947."

The Attorney General contends that it is shown by the act itself that the appropriation is not made "for a public purpose" within the meaning and intendment of section 14, art. 10, of the Constitution.

It is not contended that the purpose of the service rendered by the corporation is other than a wholesome purpose and quite valuable and beneficial to the people served, and therefore of course to the public as a whole. But it is contended that when a private corporation, association or organization is created, incorporated or chartered to render a service to the public or to work for the welfare generally or specifically, of the public as a whole, or of some particular class of the whole people, that the purpose so far as the government is concerned is a private one, and public monies of the state may

not be appropriated to such an organization to aid it in carrying out the function for which it is chartered and has its existence. That is, that while any private organization or corporation of a purely charitable, fraternal, patriotic, historical or educational nature might operate for the good of the public or that portion of the public with which it came in contact, and in fact might be for a public purpose so far as the public is concerned, yet it would nevertheless be a private organization and a private purpose insofar as concerns the state and the public monies of the state. We observe that in part the purposes of this particular organization are stated as follows:

"The purpose of this corporation shall be fraternal, patriotic, historical and education; to preserve and strengthen comradeship among its members, to assist worthy comrades; to perpetuate the memory and history of our dead and to assist their widows and orphans," etc.

We know, of course, that there are many other corporations, organizations, and societies which are organized and operate for all or various of these same stated purposes. All of them, as this corporation, are free of any control or management of or by the state or any officer or agency of the state, and of course they are not in any sense agencies of the state.

In Vette v. Childers, State Auditor, 102 Okla. 140, 228 P. 145, an attempt was made by the Legislature to appropriate money to a private organization to assist it in performing a service which, while it was a service for the public good, was nevertheless to be performed, not by the state itself or any agency of the state, but was to be furnished and provided by the private organization or corporation. In that case, after reviewing the various arguments of the parties and considering well reasoned authorities from other jurisdictions, the court announced this rule in the fourth paragraph of the syllabus:

"Under sections 14 and 19, art. 10, of the State Constitution, money in the State Treasury can only be appropriated and used for public purposes, and in order to constitute a public purpose within the meaning of this constitutional provision, such purpose must not only be affected with a public interest, but must be performed by the state in the exercise of its governmental functions, and public funds cannot be used to assist individuals in a business which is affected with a public interest, as the Constitution neither authorizes nor contemplates the exercise of governmental functions by any person, association, or corporation, except the duly constituted officers of the state."

Of course, that case differs in fact situation from this one, as is nearly always true of quoted authorities, for no two cases are ever alike in exact detail, yet the rule there stated and above quoted was the same as in other states, and upon that rule this court struck down the appropriation act there considered, though observing that the purpose for which the corporation would have used the appropriated money would have been of great benefit and value to the public. That rule would seem to be wholly applicable here and perhaps dispositive of the question. But the exact question before us is an important one to the named corporation and other similar ones, and to all our service personnel, and to all taxpayers; and in view of that importance we have again examined the decisions of other jurisdictions, including those pointed out in our own cited former decision.

And in Detroit Museum of Art et al. v. Engel, Comptroller, etc., 187 Mich. 560, 153 N. W. 700, it was held (emphasis ours):

"The Detroit Museum of Art was incorporated under Pub. Acts 1885, No. 3, as a private corporation; and Loc. Acts 1899, No. 429, amended the city's charter. and empowered its common council to appropriate for the support of the museum a sum not to exceed $20,000 annually, and Loc. Acts 1903, No. 489, Sec. 66, empowered the common council to appropriate such sum payable from

its general fund, on the express condition that the museum should be free to the public, subject to reasonable regulations of its trustees. Thereafter the museum conveyed its property to the city retaining control in the hands of a board of trustees, serving without pay, a minority of whom were to be appointed by the board of aldermen. Const. Art. 10, Sec. 12, declares that the credit of the state shall not be granted to or in aid of any person or corporation, public or private. *Held, that the corporation remained a private corporation, and that while its object was a public one in the sense of being conducted for the public benefit, it was not a 'public corporation,' within the meaning of the taxing laws, unless managed and controlled by the city,* and that Loc. Acts 1903, No. 489, violated the constitutional provision, so that mandamus would not lie to compel the city comptroller to pay the director's salary for which appropriation has been made."

In the body of the majority opinion of said case, at page 703, it is stated:

"A similar attempt was made in St. Louis, Mo., to extend public aid to an art museum under similar conditions, and one of the claims of the relator there, was that:

" 'The said St. Louis School and Museum of Fine Arts is established, regulated, and conducted in the same manner and upon the same general plan and scheme as are all of the art museums of the world, and particularly the art museums of the cities of New York, Buffalo, Chicago, Cleveland, Detroit,' etc.

"But the courts of that state withheld their sanction on the ground that *money could not be legally collected as taxes and turned over to a private corporation to disburse.* State ex rel. v. St. Louis, 216 Mo. 47, 115 S.W. 534. A like conclusion was reached under similar constitutional provisions in the case of St. Mary's Industrial School for Boys v. Brown et al., 45 Md. 310. Every argument made in behalf of relators in the case at bar is answered in those cases adversely to their contention.

"The object and purpose of relator is a public purpose in the sense that it is being conducted for the public benefit, but it is not a public purpose within the meaning of our taxing laws, *unless it is managed and controlled by the public.* As matters now stand, the people who are called upon to pay the taxes and furnish the money *have no voice in the selection of the servants of relator;* neither have they any voice in the selection of a majority of the board of directors who control and manage its affairs. It was said by Mr. Justice Campbell that:

" 'Taxes and loans, when authorized to be raised by any public body, must be raised under the implied condition that they are to be applied to the public uses under the control or care of that body.' Atty. Gen. v. Bd. of Supervisors of Bay County, 34 Mich. 46."

We deem it unnecessary to lengthen our opinion by extended quotations from other authorities. The legal philosophy appears to be followed in all of the states, and even in municipalities where the basic law is the same or similar to our Constitution, that when the constituted authorities raise money by taxation they are charged with the duty not only of expending such money for that which is ultimately in the public good and therefore for a public purpose, but also of expending it by or through public officers or public agencies. Thus the expenditures are fully controlled by those persons or agencies which in turn are subject to the control of the public which pays taxes and thereby creates the public funds.

Of course, the state may by proper appropriation act appropriate public monies to the assistance of persons in or separated from military service and their dependents and families. The state has done so quite substantially in its various appropriations to the "Soldiers Relief Commission." See H. B. 228, page 369, S. L. 1945. But that appropriation was made to a specific state agency specifically created by state law and fully managed and controlled by the state, and it is in no sense a private corporation or private agency. Incidentally, that state agency itself main-

tains a full time service agent at Muskogee to render aid and assistance in all respects similar to that rendered by the corporation named in the appropriation act here involved.

And it is the consensus of opinion in all other jurisdictions that public money may not be appropriated to a private corporation or organization, operating entirely without governmental supervision or control, no matter how wholesome may be the purpose or function of such organization nor how beneficial its acitivities may be to that portion of the public with which it comes in contact.

The plaintiff corporation cites one case from Kentucky asserted to support its contention here. Hager, Auditor, v. Kentucky Children's Home Society, 26 Ky. L. 1133, 83 S.W. 605. But upon analysis, that decision does not exactly sustain the contention made, for there, although the appropriation was made to the private organization, the act at least established some control over the private institution by creating a contractual relationship with penalty obligation, a bond, and with requirements for regular and detailed settlement and accounting to the state which would furnish some measure of control over the detailed functioning of the institution in the use and expenditure of the public money. We do not mean to imply that such character of supervision and control in Oklahoma would of itself be sufficient, under our constitutional provisions, to sustain an appropriation such as here considered, but we do observe that the Kentucky decision does not indicate that even in that state such an appropriation will be sustainable in the absence of the bond and supervision there provided and required.

For the plaintiff it is contended that if the ultimate result to be aided or in part paid for by the state fund is a wholesome result and for the good of the people, that then and in that event the appropriation is for a public purpose within the meaning of the Constitution. Upon brief reflection it must be apparent that this conclusion would be unsound, otherwise appropriation of public funds would be authorized to a great number of organizations never thought to be entitled to look to the public treasury for funds, nor to be proper recipient of such funds by legislative appropriation. We note the numerous well known health organizations to aid specifically as to tuberculosis, cancer, and polio and others. Those and many similar organizations exist solely for the public good in the aid of health, but they are nevertheless private organizations and state appropriations of public money direct to them or to be spent by and through them to accomplish their purpose and their functions would be unconstitutional. In past years we have had numerous highway organizations of citizens in various parts of the state created to promote and in some cases to do actual, though volunteer, construction or repair work on the highways. That ultimate result was, of course, for the public good and their functions were to that extent for public purpose, but the state monies could not be appropriated to them or be used by them to carry out their plans of road repair and road construction.

There are many provisions of the statute providing rules applicable to claimants and as to approval of claims against public funds and the like which are wholly applicable to and enforceable against public officers or agencies and public boards with authority to approve claims which, of course, could not be applied to boards or commissions of private organizations or corporations when they are given the approving authority or claims against public funds. All these stated provisions emphasize the constitutional policy and reiterate and follow it requiring that public funds be administered and expended by and through state officers or agencies.

For the plaintiff it is contended "that the state may make use of a private agency for the public use." That statement is correct if qualified by "in a proper manner." Very often the state

does make use of a private agency for the public use and therefor and thereby pays out public money to a private agency, as where the state, by its Highway Commission, contracts with a private corporation to build a road or bridge, or contracts with an individual to render specific service as in Carter v. Miley, 187 Okla. 530, 103 P. 2d 933. And many such instances are well known. Quite recently this court decided the cases of Children's Home v. Childers, 197 Okla. 243, 171 P. 2d 613, and Murrow Orphans Home v. Childers, 197 Okla. 249, 171 P. 2d 600. There the state having money appropriated for care of orphan children, by specific authority, the State Board of Affairs contracted with the orphan homes involved to care for certain orphan children who had become wards of the state, and in that manner properly made use of private agencies to accomplish a public use or purpose. If the appropriation had been made directly to those organizations to aid them in their fixed function, as here, the Constitution would have been violated as here. Thus we conclude that while the state may in a proper manner make use of a private agency for a public use, that philosophy does not aid plaintiff in this case.

The plaintiff makes reference to the second and concluding sentence of the appropriation act, which reads as follows:

"Said monies shall be expended and disbursed on claims approved by the Council of Administration of the Veterans of Foreign Wars, Department of Oklahoma, for the employment of a Service Officer to be stationed in the service office of the Veterans of Foreign Wars in the Regional Office of the Veterans Administration Facilities of Oklahoma, and to pay other expenses necessary and incident to such service work by said Service Officer."

An argument for plaintiff is made that the appropriation is really not made to the Veterans of Foreign Wars on account of the stated provisions for method of expenditure. But that argument is answered by the quoted language itself because expenditure is made upon claim of the corporation itself, or on claims of its employees exclusively selected and directed by it, with the claims approved by the corporation itself through its "Council of Administration." The corporation itself or its Council of Administration will thus determine what portion of the appropriation is to be expended as salary for its service officer or his aids or assistants, and what portion is to be expended for supplies or any other expenses which the corporation may approve as "other expenses necessary and incident to such service work." Thus it is apparent the real control over the spending of the money is fully placed in the designated corporation which also has control of the selection and direction of the service officer; and that the appropriation is in fact "to the Veterans of Foreign Wars" as stated in the title of the act, and as stated in the first sentence of the body of the Act as heretofore quoted in full.

On behalf of plaintiff there is some suggestion that the appropriation is really made to the service officer himself, but that argument is not greatly stressed, and we observe no controlling merit in it. While the appropriated money would go in such part as the corporation decided to the service officer as or in part payment of his personal salary, yet he himself would have no discretion or control in the approval of any claim or the expending of any portion of the money.

As to the suggestion that this is an appropriation to the service officer of the plaintiff corporation, we have observed it is not that, by its own express terms. But if it were, it would be nonetheless inhibited. See 59 C. J. p. 202, § 343b, as to unconstitutionality of providing public funds for payment of the salary of one not an officer or employee of the state.

For the plaintiff it is also pointed out that claims against this appropriation would be subject to audit and check by the State Auditor as to form and

amount, etc. That is true, of course, as to every claim presented against every state appropriation. But that does not in any case substitute the Auditor as control agency over expenditure of money in place of the control agency specifically set up in various appropriation acts in appropriating money to and for specific state agencies. Likewise in this case that would not substitute the Auditor as control agency for expenditure under this appropriation in lieu of the named corporation or its chief officers or its Council of Administration, as specifically set up in the act and specifically clothed with authority to approve the claims.

The Attorney General also points out that section 15, heretofore set out in part, and section 19, art. 10, are violated. Section 19, supra, is violated when tax money raised for general purposes is diverted to this corporation without constitutional authority. Section 15 is violated since this is a gift in a legal sense to this corporation, not a state agency. Of course, this is not a gift in the general sense of being a pure gratuity reward or bonus or donation, given for the sole private benefit of the donee, as an individual gift to a relative or friend. But the contention is that it is a gift within the meaning of constitutional provisions, since it is an expenditure of public money, but not by the state in the manner and with the supervision, and character of public purpose, set out, and authorized and required.

Having no connection with the state, this organization has no right to look to the state for financial maintenance, and having no claim on the state, money received by it is a gift within the constitutional intent as shown by the language of the court in Carter v. Thomas, 172 Okla. 558, 46 P. 2d 460. There it was said:

"But plaintiff insists that, regardless of any legal liability, the Legislature of Oklahoma, with full knowledge of the law announced by this court and of all of the facts of the case, never-

theless, has appropriated the money with which to pay plaintiff's claim, and that the Legislature's discretion and power to appropriate is without limit in our state.

"The plaintiff is in error. By section 15, art. 10, Constitution of Oklahoma, the Legislature is prohibited from making a gift of the revenues of the State of Oklahoma. The word 'gift,' as used in our Constitution, has been defined by this court to mean:

" 'A gift, as used in this section, intends all appropriations for which there is no authority or enforcible claim on which rests alone some material equitable obligation which in the mind of a generous or even just individual dealing with his own money might induce him to recognize as worthy of his reward.'

"See Hawks v. Bland, 156 Okla. 48, 9 P 2d 720. We are therefore of the opinion that under the above-cited authorities a part of this appropriation was clearly a gift as defined therein, and as such is clearly prohibited by section 15, art. 10, Constitution of Oklahoma."

In the case of Hawks v. Bland, above, referred to, this court held:

"Where specific constitutional prohibitions against gifts of public money exist, public money cannot be lawfully appropriated to meet an obligation, however just and equitable, unless it is of such a character that it could be enforced in a court of law."

The above Oklahoma cases are supported by the general rule which is set forth in 59 C.J. p. 202, sec. 343b, as follows:

"The Constitution of certain states . . . . expressly prohibit the Legislature from making any gift to or in aid of any individuals or corporation . . . statutory provisions . . . have been held unconstitutional in granting or providing for the payment for services of one not an officer of the state . . ."

The plaintiff cites and places reliance upon Carter, State Auditor, v. Miley, 187 Okla. 530, 103 P. 2d 933, but the controversy there bears little or no resemblance to the controversy here.

There we were not considering a legislative appropriation made direct to Judge Miley, or an appropriation of money to be expended by him or on claim approved by him. Quite the contrary. There the State Highway Commission, a part of the state government, or a definite state agency, having specific legislative authority, contracted with Judge Miley to render a specific legal service to the State Highway Commission itself. That, as we have heretofore pointed out, was a proper use and in a proper manner of private service for the state itself, with the state establishing a fixed contractual relationship and having complete control of the rendition of the service and the fixing of the amount of compensation therefor, and of course with complete selection of the service agency and the individual service agent by the state itself.

The Attorney General points out with emphasis that this appropriation act represents a sharp departure from past policy of the state without constitutional sanction, and therefore a departure from constitutional policy itself. Also, it is pointed out that upon approval of this policy there would be created many new channels for expenditure of tax monies, having in mind many other corporations, organizations, and clubs which now render similar aid to service personnel and their relatives at many places in the state. Notably, among others, are The American Legion, United States Spanish War Veterans, Marine Corps League, U. S. Blind Veterans of World War, Disabled American Veterans of World War, American Red Cross, and various and numerous civic clubs, Bar Associations, and Chambers of Commerce. At least, several of such organizations other than plaintiff maintain service agents and render similar service at Muskogee. It is pointed out that the sustaining of this appropriation would authorize similar appropriations to many such organizations, and, indeed, might require them in order to avoid legal discrimination. While that argument is not of controlling impor-

tance, it does demonstrate the wisdom of a constitutional policy which requires the state to conduct its operations for the public good or purpose through state installations or agencies where the state may have essential control and the power of direction in order to make the expenditure one for a public purpose within the meaning of the Constitution.

Upon the whole consideration we are convinced that this appropriation is in violation of the Constitution in that this public money is not appropriated and disbursed by the state for a public purpose within the intendment of the Constitution, and that the appropriation constitutes a gift of public monies in that it is appropriated to a private corporation or for expenditure by and through the corporation in the furtherance of its particular functions and activity instead of an appropriation and expenditure by and through state officers or state agencies or installations.

It must follow that the writ sued for should be denied, though fully understanding and appreciating the wholly worthwhile efforts and activities of the Veterans of Foreign Wars and the value in Oklahoma of the services rendered by this organization to service personnel and their dependents.

The defendant by answer and brief sets out other provisions of the Constitution with the assertion that they too are, or might be, violated by this exact character of appropriation. We need not dwell on that, as we have demonstrated the appropriation may not stand in view of the constitutional provisions we have pointed out and discussed.

Writ denied.

HURST, V.C.J., and OSBORN, BAYLESS, WELCH, CORN and DAVISON, JJ., concur. RILEY, J., dissents.

———

RILEY, J. (dissenting.) This original action, in which a writ of mandamus is sought as against the State

Auditor to require of him that he ·pay the salary claims of two persons,· by them filed with respondent and in the sums of $125 and $50, respectively, for services rendered the state as a service officer and secretary, respectively, pursuant to employment under provisions of S.L. 1945, p. 436, was filed in this court September 18, 1945. It was assigned and submitted for an opinion December 12, 1945. By the majority per curiam opinion, mandamus is denied and the act making the appropriation is held to be unconstitutional and void.

Reasons, if any, for the majority opinion had distinct parentage and relations at the time decision was made by the majority, June 28, 1946. But now the opinion, being per curiam, may be considered as of polygamous origin. It is not named. The judgment is a departmental order.

Is it too much to ask of the hermetic conference that judges the rights and liberties of the citizen that the author of the opinion sign his name? And that reason for the judgment in all cases be given in writing at the time of decision?

The constitutional mandate, section 5, art. 7, requires that of the justices, within six months' time after submission of such a cause. Six months is a reasonable time after a cause has been submitted.

Some think determinations may be made by mere orders. Opinions per curiam intended to support such orders. These are huddled up in conclave and handed down by the Chief Justice, or, in his absence or inability to act, by his substitute. Such was the system of the old world when the king ruled by divine right, where the king's court could do no wrong.

But Jefferson gave to the world a reasoned opinion justifying war. That opinion was promulgated at the time of decision; and then a people's government was fashioned in America and a people's government established in Oklahoma. The citizen so unfortunate as to become a litigant was given right as against the government and the Supreme Court, an instrumentality of it, to know the reason why.

This for the purpose that the body of the citizenship might know justice would be administered in their courts; and so the citizen, having means of information, might foretell his fate and without becoming a litigant, regulate his own action and conduct.

The Jeffersonian principle is embedded in the constitutional mandate, supra, and, by another, a remedy shall be afforded for every wrong. For judgment by the court of last resort in each case, it is believed a written opinion in the name of the author is proper and of good taste when such an opinion is, by the majority, adopted in that form. The spirit of independence and of official responsibility suggests that opinions be signed in the name of the justice who prepares them and with a signature, like John Hancock's, so big that even the king can see it.

In my judgment, the majority opinion commits grievous errors in many respects. The majority assumes that the Veterans of Foreign Wars is a private corporation in order to decide that other corporations and societies organized and existing for fraternal, patriotic, historical and educational purposes and to preserve and strengthen comradeship among its members, and to assist them and to perpetuate the memory of the dead and to aid their dependents, are not agencies of the state.

However, had the congressionally incorporated articles before us of the particular organization (74th Congress, 49th Statute, 1390, 1391) been considered, it would be apparent that the purpose of the Veterans of Foreign Wars is *to maintain true allegiance to the government of the United States of America*—a public purpose, and *fidelity to its Constitution and laws*—a desirable state of the Union; *to foster true*

*patriotism*—so necessary for defense of the state and nation; *to maintain and extend the institutions of American freedom* — an evangelism of ideology; and *to preserve and defend the United States from all her enemies, whomsoever*—domestic and foreign.

The first sentence of Senate Bill 245, Session Laws 1945, p. 436, is held by the majority to "completely make the appropriation." It would seem certain that if the appropriation under consideration is completely made by the first sentence of the act, no consideration need be given specifications contained in the act. Paradoxically, however, the majority holds that which is completely made to be completely eradicated by the adjudged invalidity of the act. It is my view that specifications of the act also completely make an appropriation. Those specifications are phrased in these words, which provide that a definite sum appropriated *"shall be expended and disbursed on claims approved by . . . the Veterans of Foreign Wars . . . and for the employment of a service officer to be situated . . . in the regional office of the Veterans' Administration Facilities of Oklahoma. . . ."* Riley v. Carter, State Auditor, 165 Okla. 262, 25 P. 2d 666.

Poor relations of the majority per curiam opinion are mentioned. Some of these are Murrow Indian Orphans Home v. Childers, 197 Okla. 249, 171 P. 2d 600; Children's Home and Welfare Ass'n v. Childers, 197 Okla. 243, 171 P. 2d 613; Cope v. Childers, 197 Okla. 176, 170 P. 2d 210; Holt v. Childers, 196 Okla. 4, 168 P. 2d 890; Wells v. Childers, 196 Okla. 353, 165 P. 2d 371. By the present majority view, in which reference is made to many well-founded decisions, the scrutiny should not be diverted from maladministration by which public monies are extracted from the treasury by a false administration to individuals, associations, corporations and sectarian institutions under the guise of allocations and the existence of contract, in lieu of legislative appropriations.

The founding fathers never thought any money would ever be paid out of the treasury except in pursuance of an appropriation by law, which appropriation, in order to be a legislative act, is required to be introduced as a bill. The act "shall distinctly specify the sum appropriated and the object to which it is to be applied." Section 55, art. 5, Constitution.

Nevertheless, by reason of our decision in Cope v. Childers, public monies from a sequestered lump sum, by a mere gubernatorial allocation to the Soldiers' Relief Commission, are extracted from the treasury and by the Soldier Relief Commission's false administration expended to divers and sundry persons to be employed without limitation as to number or legislative specifications of duties, and for whose employment or designation of duties the Legislature has never made provision. The employment is contrary to statutory law by which the Legislature limited employment to such as might be paid from a specific legislative biennial appropriation for the Soldiers' Relief Commission legislatively and constitutionally made.

According to my expressed views in the Cope Case, the majority were in error. But in the case at bar, the majority "confound confusion," commits another grievous error by its present decision holding void that which is a valid legislative appropriation, definite in amount ($5,000) and specific as to object.

In view of the new order of allocations in lieu of administrative appropriation as made with such general and majority approbation, it is no wonder a legislative appropriation as of yesteryear, in days before governmental administration supplanted constitutionalism, is not recognized; alas, the old order, it is outmoded.

The majority, by per curiam opinion, twice say in the alternative, disjunctive expressions that the public monies appropriated may go either to the Vet-

erans of Foreign Wars or in payment of salaries to individuals. These words are used:

(1) "Expenditure is (to be) made upon claims of the corporation itself, or on claims of its employees exclusively selected and directed by it, with claims approved by the corporation itself through its council of administration."

(2) "That the appropriated money could go in part as the corporation decided . . . or in part payment . . . of salary."

There can be no reason for such confusion or misapprehension. The Veterans of Foreign Wars has made no claim; it has no power of *decision,* except like unto statutory provision for selection of personnel of the Soldiers' Relief Commission (H.B. 228, S.L. 1945, p. 369), in each instance devoted to the public purpose. The Veterans of Foreign Wars has merely the additional responsibility and power of *approval* of claims filed by individuals for their salaries as against the appropriation and monies thereof impounded within the State Treasury.

The claims are two in number and are by Archie A. Jones, of Muskogee, service officer, for salary or wage for the month of July, 1945, in the amount of $50, and by Martha Walton, of Muskogee, Okla., as secretary to the state service officer for her salary for the month of July, 1945, in the amount of $125. Both claims are signed by the individuals and verified by them, with organization approval.

The individual claimants have rendered services at the Federal institution at Muskogee, devoted exclusively to the dual State-Federal purpose of hospitalization and rehabilitation of soldiers and sailors sick with service-connected ailments or disabilities incurred in line of duty.

The per curiam opinion, as reflected by paragraph 2 of the syllabus, determines that the public monies appropriated may not be used for the payment of the individuals' salary claims because the purpose of the appropriation is not public though *"affected with a public interest"* and because the services as performed were not within *"the exercise of its governmental functions"* "as the Constitution neither authorizes nor contemplates the exercise of governmental functions by any person, association or corporation except . . . constituted officers or agencies of the state."

In the main, unanimous agreement might be had with the novel pronouncement of law in Oklahoma were it not for the poor relations heretofore cited, Children's Home & Welfare Association et al. v. Childers and Murrow Indian Orphans Home v. Childers, promulgated by the same majority determination adversely, so that payment to corporate and sectarian institutions for the performance of their individual corporate, sectarian purposes, affected with the public interest but not a part of the public and governmental function performed by state officers or employees nor within state institutions, could be paid monies from the State Treasury; those were not claims, as here, for payment of salaries to individuals.

The majority then and there held such payment not violative of the same section of the Constitution (section 15, art. 10) as would now, within majority view, be violated by payment of services to the individuals. Such versatility in law is by some abhorred. And those who direct such institutions as well as those who enact such statutes might be forewarned by words of the Supreme Court of the United States in Wickard v. Filburn, 63 S.Ct. 82, where it is said: "It is hardly lack of due process for the government to regulate that which it subsidizes" so that "statutes may enlarge the powers of the state to place restraint upon human conduct and endanger civil and religious liberties." Murrow Indian Orphans Home v. Childers, supra.

The corporate state can do nothing

by itself; it is an inanimate object. "Governments, like clocks, go from the motion that men give them, and as governments are made and moved by men, so they are ruined too." Benjamin Franklin.

Can it be that the rule of law in Oklahoma, as now made by the majority decision, is such that functions of the state as to eleemosynary institutions, inclusive of orphans' homes, may receive from the State Treasury public monies only when such institutions are owned, maintained, and governed by and through officers, directors, commissioners, agents, and employees of the state? And if so, the majority should have disowned its own brain children born and christened by them June 11, 1946, and heretofore, as to reasoning, cited with contempt.

The majority, to clear the field of law, should have overruled and cut out the underbrush of its own former per curiam opinion and decision of 1926, Board of Education of Oklahoma City v. Thurman, 121 Okla. 108, 247 P. 996, to adhere to the dissenting views therein expressed.

Generally speaking, public officers, in the performance of public duties, must avail themselves of the means as the law has provided, and while such means exist there can be no necessity to imply others. Smith v. City of Scranton, 2 Pa. C. Rep. 331. But the residuum of power in state governments is in the Legislature. The Legislature giveth and the Legislature taketh away. So then, legislatively, an additional facility may be provided in time of emergency as by the act under consideration, for the performance of the governmental purpose. Carter v. Miley, 187 Okla. 530, 103 P. 2d 933.

The holding that the purpose is not public seems to be ridiculous.

Will it be denied that in time of war the state has authority to appropriate public monies for the pay and keep of soldiers, or for incidentals such as muskets, bayonets, gun powder, and cannon, or for the care and sustenance of soldiers' and sailors' dependents?

What section of the Constitution prohibits the Legislature from making appropriations with which to fully pay debts that may in whole or in part be due and owing subsequent to the performance of the duty to defend the state in war?

As a general rule, the services of men can only be had by being paid for. "The laborer is worthy of his hire."

The fact is no part of the public money appropriated (S.L. 1945, p. 436) known as the Veterans of Foreign Wars and this is so because the act specifically provides that the funds appropriated for the biennium ($5,000, a very modest sum in comparison with the $30,000 *allocated* to the Soldiers' Relief Commission with officials selected by the American Legion, and the $100,000 allocated and paid to the corporate and sectarian institutions, Murrow Indian Orphans Home, Children's Home & Welfare Ass'n, supra) "shall be expended and disbursed on claims . . . for the employment of a service officer." (That service officer may not devote his time and attention wherever in his discretion or the discretion of patriotic organization, the service officer may be stationed to serve. Contrawise, as to the statutorily prohibited employees of the Soldiers' Relief Commission.) This is a service officer "to be stationed in . . . the Regional Office of the Veterans Administration Facilities of Oklahoma as provided by the Legislature. That service officer is the agent, servant and employee of the state.

The important and decisive factor is that, who gets the money?

By law, 62 O.S. 1943 § 93, the funds appropriated remain in the State Treasury until disbursed on approved claims to the claimant individuals, who must be the service officer and his secretary. These claims are itemized as required

by law, 74 O.S. 1941 § 33, and by law the State Auditor must semi-annually report the claims to the Governor and make biannual report of them to the Legislature. 74 O.S. 1941 § 39.

This court has recently sanctioned fusion and consolidation of legislative and executive authority. Cope v. Childers, supra; Holt v. Childers, supra; Wells v. Childers, supra.

This court has recently sanctioned consolidation of functions between Church and State. Children's Home & Welfare Association v. Childers, Murrow Indian Orphans Home v. Childers, supra, and in each instance there has been, with some vigor, four written dissenting opinions filed. But now the majority have "about-faced." And I deem it my official duty, in the interest of constitutional law and regularity of procedure, to maneuver with equal versatility.

The state and federal governments exist, paradoxically, as it may seem, with a consolidated but divided authority. So to speak, the respective authorities constitute a sovereign state within a sovereign state, inseparably joined in an indestructible Union, and this was so as a result of armed conflict—The War Between the States. That compact, by musket and sword and cannon, was welded and tempered in the red blood of patriots. It may be geometrically described as a circle within a circle. "The Union, it must be preserved." To preserve the Union, it must be defended from foes, foreign and domestic, and that is the public purpose of the public corporation, incorporated by the Act of Congress, the same purpose as that of government. But the Veterans of Foreign Wars is now adjudged by per curiam opinion to be private and the appropriation is held to be without constitutional sanction or for a governmental purpose. The Veterans of Foreign Wars has been authorized to do business in Oklahoma as much so as the Soldiers' Relief Commission. The charter of the Veterans of Foreign Wars, as required by Act of Congress, may be found in the office of the Secretary of State. It is a public corporation devoted to purposes public.

The defense of the Union, even though by *preventative* wars, and not of home or fireside character, or in defense of these shores, may be in wars or conflicts upon the seven seas or at the polls or upon foreign battlefields or in the market place or the forum or in a domeless Capitol.

The republic, by preamble of Constitution, is dedicated to the *common* defense. The common defense contemplates *the state,* for it is "an inseparable part of the Federal Union," section 1, art. 2, Const. of Oklahoma, and so the nation will defend the state. The state, on its part, also has power and authority to make war, "to repel invasion, to suppress insurrection, or to defend the state in war," section 24, art. 10, Const., Wells v. Childers, supra, and so the state as an inseparable part of the Union may provide defense for it and pay the cost thereof.

Therefore, while in the other four instances the majority erred in sanctioning consolidation of *departmental* powers of state government, for "neither shall exercise powers properly belonging to either of the others" (sec. 1, art. 4, Const. Okla.), and the majority erred in sanctioning consolidation of the functions of *Church and State* for "no public money or property shall ever be appropriated, applied . . . or used, directly or indirectly, for the use, benefit, or support of any sect . . . denomination, or system of religion . . . or sectarian institution . . ." (Sec. 5, art. 2, Const.) Again, the majority err in the case at bar because the justices think, though the name of no one of them is at the mast head of the opinion, that the object of the appropriation is not for a public purpose.

Famine, fire, flood, pestilence can be fought by means that may require an

344

organized effort, but such an effort cannot accomplish a greater public purpose than is accomplished by defending the state in war.

In time of war, the state commands. There is no avoiding the performance of the service except by inability, old age, or infirmity. The citizens must obey and the obligation is created in that way. It is not discharged until restoration is made and just compensation is paid. The amount of just compensation to soldiers, sailors, and marines may be lessened by hospitalization and rehabilitation of them.

Perpetuation of a government, republican in form, maintenance of free institutions, preservation of the light of civilization are promoted by liquidation or reduction of the public obligation. Whether liquidation of the obligation is afforded in part by accommodating the wreckage of the battlefield to facilities of a hospital or whether it is accomplished by a direct payment of just compensation for life or liberty· of the individual taken and damaged, the result to be accomplished by the appropriation and payment of it is a public purpose.

Vette v. Childers, State Auditor, 102 Okla. 140, 228 P. 145, relied upon, does not involve the issue at bar. That appropriation was in the amount of $1,-250,000 to be invested in first mortgage bonds of warehouse property, owned and operated by Farmers Co-Operative Association, a business association operated for profit. That decision is based on Loan Ass'n v. Topeka, 20 Wall. (U.S.) 655, 22 L.Ed. 445, relating to a bonus provided by bonds issued within the letter of the law, to be given to a railroad corporation to induce it to serve the city of Topeka with its facilities and not to by-pass the city nor by collusion to· compete with it. The Supreme Court of the United States, as to the levy of taxes to pay the bonus bonds, held it was nonetheless robbery that it was done under the guise of law. The purpose was not public. Govern-

ments do not exist to take from all to enrich by gift a few. Payment from public money for services rendered for a public purpose, unless prohibited, may and should be made.

Carter, State Auditor, v. Thomas, 172 Okla. 588, 48 P. 2d 460, is not decisive of the case at bar, for there the services rendered were not within provisions of law nor were they rendered in contemplation of an appropriation with which to pay for the services. The services were rendered as a result of the usurpation of an office which had been vacated by force applied by rule exerted under an executive order and decree by a violent, despotic Governor.

"I am up. Here I stand, knowing proprieties of place and especially of time are bugbears which terrify mankind from 'the contemplations of the magnificent. Once I was myself a decorist but that sublimation of folly palled upon my soul." (Bussy D'Amboise, Chapman's.) This is now fitter for the purpose of the state, for with assault at Hiroshima, Nagasaki, an experimentation at Bikini, we have "unlocked the gate to Hell and our shoulders must be held against it." No lesser man than Einstein finds security only in the hearts and minds of men. The prompt action of courts to administer justice may stay the destruction of lives and liberties.

Where the purpose is not public, appropriations may not be made or paid. Detroit Museum of Art et al. v. Engle, 187 Mich. 432, 153 N.W. 700; St. Louis School and Museum of Fine Arts v. City of St. Louis, 216 Mo. 47, 115 S.W. 534. But this does not mean that services of an individual may not be remunerated from funds of an appropriation when the services are devoted to a governmental duty and not by law prohibited as contrary to a public policy. Murrow Indian Orphans Home v. Childers, supra; Carter, State Auditor, v. Riley, 187 Okla. 530, 103 P. 2d 933.

The state, acting in its sovereign ca-

pacity, has right and power to employ an individual to perform a governmental duty, and unless by specific constitutional restriction the state is prohibited from appropriating or paying from public funds, a consideration for the performance of the duty, provision by the people or their agency, the Legislature, with which to pay for such services, is a valid appropriation.

In the Miley Case this court sustained the employment of an attorney, in the absence of an attorney by law provided for the state Highway Commission, and payment to him of public money for his hire. In Board of Education of Oklahoma City v. Thurman, the view was expressed that no attorney could be employed where by statute the duty devolved upon an officer existing and paid to do that duty.

The words of the Constitution govern. No court may properly delete words or meaning of a Constitution; the rule stated, however, does not apply to a mere statute. As an exhibit governs a pleading, so do specifications of a legislative act govern it. Therefore, words of a statute may be deleted when measured by a constitutional prohibition. Idle words of S.L. 1945, p. 436, saying the appropriation as made to the V.F.W. could be held void and so stricken from the act, for reasons now satisfactory to the majority. However, the phrase contained in the act, specifying the amount appropriated "shall be expended and disbursed on claims . . . for the employment of a service officer . . ." constitutes an appropriation as much so as the words "shall be paid" "monthly" "a fixed amount" constitute an appropriation without any act of the Legislature, because these expressions were contained in the Constitution itself and were quite sufficient in themselves to appropriate money with which to pay the salary of the justices. Riley v. Carter, 165 Okla. 282, 25 P. 2d 666, 88 A.L.R. 1018.

The majority is confused by deciding that prohibitions of Constitution which should and do restrict the appropriation or payment of any public money to corporate or sectarian institutions has application to the payment of claims filed by these individuals who labor for the public purpose, state and federal, and as agents and employees of the state selected by the patriotic organization.

The Attorney General makes no contention in brief or in oral argument that the appropriation is not for a public purpose; to the contrary, on behalf of respondent, the State Auditor, that issue is specifically omitted and it is so stated in briefs filed. Nevertheless, the majority seize upon the omission to commit the grievous error.

Expenses such as incurred in providing manpower defense of the nation and through the War Department, an agency of federal government the state in time of war, are for a public purpose.

When, in time of war, it becomes necessary to take property and use it without at the time paying compensation, a statute subsequently enacted appropriating money for the payment of just compensation for property thus taken is an appropriation for a public expense and for a public purpose.

Military services of persons, whether that service be voluntary or selective, is equivalent to property taken for the public purpose.

All persons have an inherent right to life and to the pursuit of happiness and to the enjoyment of the gains of their own industry. But for the good of all, by government, citizens are to be let alone, for their private purposes, whether of gain or loss. Section 2, art. 2, Constitution. "No person shall be deprived of life, liberty or property without due process of law." Section 7, art. 2, Constitution. When the individual's life, liberty or property is taken or damaged for public use, due process contemplates payment or just compensation.

If it be admitted that to defend the state in war, when war is declared, the citizen's army may be paid, would it not be admitted that for such duty done, defenders of the state may be paid *subsequently* by appropriation made for the specific purpose? If, then, direct payment for military services may be made, pending or subsequent to performance, and if it be admitted that the compensation to be paid must be adequate, can it be maintained that legislative provision must be declared void when its public purpose is to secure the services of a person or a couple of them (a service officer and his secretary) qualified by training to aid the state and veterans in reducing the amount of compensation due the veterans by affording the veterans hospitalization and rehabilitation or the bounty of a just and generous federal government?

I condemn the decision. A wag once said, "the law is an ass"; be it known that so far as this decision is the law, it can claim no dissent from me. Nor is the father of it named.

Since by the text of the act the Veterans of Foreign Wars, a corporation, though public but incorporated by Act of Congress, receives no part of the money appropriated, the fact that it is a corporation is wholly immaterial as is the fact that the service officer is selected by it comparable to the manner of selection by the American Legion of the Soldiers' Relief Commission.

When services are had for a public purpose, pursuant to contract express or implied, such services constitute a consideration justifying an appropriation with which to pay for such services. These services rendered and for which claims are made were not accepted or rendered voluntarily, but in view of an act specifying the purposes to be paid and making an appropriation with which to pay for the services contracted and now rendered. The appropriation does not offend the provision of the Constitution prohibiting gifts from the state.

Were the appropriation not definite as to amount and object, the sophistry heretofore included and often repeated at the expense of the state, conducive of graft and corruption as to lump sum appropriations and revolving funds, would suffice to save the act from invalidity. Edwards v. Childers, 102 Okla. 158, 228 P. 472; In re Funding Bonds, 173 Okla. 622, 50 P. 2d 221.

Though the Constitution says so, section 55, art. 5, the appropriation need not distinctly specify the sum appropriated or the object of expenditure, for that which by administration and accounting may be subsequently rendered certain, by court decision will be considered as certain at the time the appropriation bill becomes an act. The decisions were not always so. Menefee, State Treas., v. Askew, 25 Okla. 623, 107 P. 159, 27 L.R.A. N. S. 537.

A gift is a voluntary transfer of property made or voluntary services rendered without binding consideration. The services rendered in the case at bar were in reliance upon an appropriation made. They did not constitute a gift. Section 17, art. 10, Constitution. Nor does the appropriation with which to pay for the services rendered constitute a gift if from the monies appropriated the debt were paid. Mandamus is the proper remedy to enforce payment of the debt. The writ should issue.

These services were had for the public purpose of discharging an obligation arising by reason of war service rendered by some in the defense of all, a defense protecting our property, our liberty and our lives.

The purpose of the appropriation and the public purpose of the services secured by the act and by the persons rendered, is not only a public one and therefore governmental, the services were in defense of institutions of all

kinds, inclusive of the corporate state and the people's courts.

"He who saves his country, saves all things, and all things saved bless him; he who lets his country die, lets all things die, and all things dying curse him." Defense by organized society is now and always has been a public purpose. Nothing can be more public, as none are so blind as those who will not to see.

Hawks v. Bland, 156 Okla. 48, 9 P. 2d 720, relied upon by the per curiam opinion, flowed from my pen. The impulse behind that pen should know better than the inanimate per curiam opinion, its limitation and present applicability.

Though these proceedings have long been pending and petitioner has awaited decision three times longer than the Constitution contemplates, other proceedings have been disposed of with dispatch. Absent and acquiescent justices would not hear dissident views, to confuse.

It may be time is not adequate for proprieties or due process of law.

Alors, Kipling, in his "If" evidenced knowledge that the warping of one's words could make one (Hawks v. Bland) to "crie alarme against . . . proud ignorance wherewith many . . . countryman are absurd." Waugh's Champion.

Goethe says:

"Oh, that there are so many senses,
  That bring confusion into happiness."

The poet could not have been thinking of a dissident jurist nor of justices major when he added:

"When I see you, I wish I were deaf,
  And when I hear you—blind."

Howbeit, whether Justicia is deaf as well as blinded to the balance struck, there are those of us who can repeat Solomon's prayer, and, repeating, have growth in knowledge of law.

"Give me a mind which understands,
  Just wise enough to know,
  The good from evil always
  That others I may show."

For these reasons I dissent.