CITIES AND TOWNS Under the authority of 11 O.S. 642 [11-642] (1971), the City of Lawton may lawfully expend Federal Revenue Sharing funds of the City for the purpose of providing hot meals to elderly and handicapped persons in order to prevent malnutrition. Under Article X, Section 17 of the Oklahoma Constitution, such Federal Revenue Sharing funds of the City may not be appropriated directly to a private entity. Such funds may, however, be lawfully expended by the City pursuant to a contractual arrangement with Lawton Mobile Meals, Inc., a non-profit charitable corporation for the purpose of providing hot meals to elderly and handicapped persons in order to prevent malnutrition. The Attorney General has considered your request for an opinion wherein you ask, in effect, the following question: Can the City of Lawton lawfully appropriate and expend City funds, specifically Federal Revenue Sharing funds, in order to support the program of Lawton Mobile Meals, Inc., a nonprofit charitable corporation, whose purpose is to provide hot nutritious meals to elderly and handicapped persons, thus preventing malnutrition ? As to whether a city may expend funds for the purpose of providing meals to elderly and handicapped persons in order to prevent malnutrition, 11 O.S. 642 [11-642] (1971), relating to the general powers of cities, provides in pertinent part as follows: "The mayor and council shall have the care, management and control of the city and its finances, and shall have the power to enact, ordain, alter, modify or repeal any and all ordinances not repugnant to the laws of the United States and the Constitution and laws of this State, as they shall deem expedient and for the good government of the city, the preservation of the peace and good order, the suppression of vice and immorality, and the benefit of trade and commerce, and the health of the inhabitants thereof, and such ordinances, rules and regulations as may be necessary to carry such power into effect. . ." (Emphasis added) Clearly, the city has broad authority to promote the health of its inhabitants. Under Article X, Section 17 of the Oklahoma Constitution, however, a city is precluded from making a direct appropriation to a private corporation, see Veterans of Foreign Wars v. Childers, 197 Okl. 331, 171 P.2d 618 (1946), wherein the following language appears: "And it is the consensus of opinion in all of the jurisdictions that public money may not be appropriated to a private corporation or organization, operating entirely without governmental supervision or control, no matter how wholesome may be the purpose or function of said organization, nor how beneficial its activities may be to that portion of the public with which it comes in contact." Article X, Section 17, does not, however, appear to preclude a city from acquiring services through a private entity for the benefit of the "health of the inhabitants" of the city, since in view of the lan guage of 11 O.S. 642 [11-642] (1971), this would not appear to be a donation or gift to a private organization, unsupported by consideration flowing to the city. See, Childrens Home and Welfare Association v. Childers, 197 Okl. 243, 171 P.2d 613 (1946), and Murrow Indian Orphans Home v. Childers, 197 Okl. 249, 171 P.2d 600
(1946). While these two cases deal with the constitutional gift prohibition applicable to the State, contained in Article X, Section 15 of the Oklahoma Constitution, that prohibition is very similar to the one contained in Article X, Section 17 of the Oklahoma Constitution, applicable to cities and counties. In both of these cases, the court held that the keeping and caring for orphaned children by a private non-profit association or corporation constituted sufficient valuable consideration to support the payment of public money raised by taxes to such association or corporation for the keeping and caring of the children and, therefore, did not violate the gift prohibition of Article X, Section 15. In both of these cases, the arrangement between the State and the private orphanage was by contract. Under 11 O.S. 568 [11-568] (1971), cities are designated as bodies corporate and are expressly authorized "to make all contracts and do all other acts in relation to the property and affairs of the city necessary to the good government of the city, and to the exercise of its corporate and administrative powers." In view of this, it is obvious that the city can carry out its authority with regard to the promotion of the health of its inhabitants, as set forth in 11 O.S. 642 [11-642] (1971), by means of a contractual arrangement with a private non-profit corporation. Further, 56 Am.Jur.2d Municipal Corporations, 439, at pages 488 and 489, provides in pertinent part as follows: "Generally speaking, and within the scope of the police powers usually granted to municipal corporations by the State Constitution or State Legislature, municipal corporations may enact all appropriate ordinances or promulgate appropriate regulations for the protection and preservation of the public health and to control whatever constitutes a menace thereto . . . It is a well-settled maxim that 'the health of the people is the first law' . . . "Ordinances to preserve the public health have been liberally construed . . . Inasmuch as the preservation of the public health and the safety of the inhabitants is one of the chief purposes of local government, all reasonable ordinances in this direction have been sustained. . ." (Emphasis added) In view of the foregoing, it would appear that the expenditure of Federal Revenue Sharing funds by the City for the purpose of providing meals to elderly and handicapped persons in order to prevent malnutrition is encompassed in the City's authority to promote the health of its inhabitants under 11 O.S. 642 [11-642] (1971). Thus, such a purpose is a proper public purpose. This being so, it appears that such purpose could be carried out contractually through a private non-profit charitable corporation and that the performance of such purpose or function by such corporation would be valuable consideration flowing to the City in return for the City's payment of funds to the corporation. Therefore, under the decisions in Childrens Home and Welfare Association v. Childers, supra, and Murrow Indian Orphans Home v. Childers, supra, funds paid by the City to the corporation would not be the appropriation of money, levy of tax or a loan of the City's credit to the corporation, within the meaning of Article X, Section 17 of the Oklahoma Constitution. It is, therefore, the opinion of the Attorney General that your question be answered as follows. Under the authority of 11 O.S. 642 [11-642] (1971), the City of Lawton may lawfully expend Federal Revenue Sharing funds of the City for the purpose of providing hot meals to elderly and handicapped persons in order to prevent malnutrition. Under Article X, Section 17 of the Oklahoma Constitution, such Federal Revenue Sharing funds of the City may not be appropriated directly to a private entity. Such funds appropriated by the City for the purposes set forth herein may, however, be lawfully expended by the City pursuant to a contractual arrangement with Lawton Mobile Meals, Inc., a non-profit charitable corporation for the purpose of providing hot meals to elderly and handicapped persons in order to prevent malnutrition. (GERALD W. WEIS) ** SEE: OPINION NO. 94-551 (1994) (UNPUBLISHED) **